UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK
_____

MARY K. MITCH,

Plaintiff                DECISION AND ORDER

-vs-
15-CV-6180 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.
_____

APPEARANCES

For the Plaintiff:              Howard D. Olinsky, Esq.
                                Olinsky Law Group
                                One Park Place
                                300 South State Street, Suite 420
                                Syracuse, New York 13202

For the Defendant:              Graham Morrison, Esq.
                                Rebecca H. Estelle, Esq.
                                Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza, Room 3904
                                New York, New York 10278

                                Kathryn L. Smith, A.U.S.A.
                                Office of the United States Attorney
                                for the Western District of New York
                                100 State Street, Room 620
                                Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Mary K. Mitch ("Plaintiff") for Social Security Disability

1

Benefits ("DIB").  Now before the Court is Plaintiff's motion (Docket No. [#7]) for judgment on the pleadings and Defendant's cross-motion [#12] for judgment on the pleadings.  Plaintiff's application is denied and Defendant's application is granted.

BACKGROUND

The reader is presumed to be familiar with the Parties' submissions, which contain detailed recitations of the pertinent facts.  The Court has reviewed the entire record and will offer only a brief summary of those facts.  Plaintiff claims to be disabled due to both physical impairments and psychological impairments.  These impairments include depression, and back pain attributable to Fibromyalgia.

Geoffrey Morris, M.D. ("Morris") was Plaintiff's primary care physician.  On December 31, 2013, Morris issued reports detailing Plaintiff's limitations. (308-316). Morris indicated that Plaintiff could occasionally lift and carry up to ten pounds, sit for eight hours without interruption, stand for fifteen minutes at a time, walk for twenty minutes at a time, sit for eight hours during an eight-hour workday, stand for four hours during an eight-hour workday, and walk for four hours during an eight-hour workday. (309).  Morris indicated that Plaintiff could frequently use her hands -- for reaching, handling, fingering, feeling, pushing and pulling -- and could frequently use her feet to operate foot controls. (311).  Morris stated that Plaintiff's impairments did not affect her hearing or vision (312), but also stated, without explanation, that she could only tolerate "moderate" noise, such as one would experience in an office setting. (313).  Morris further stated that Plaintiff was capable of shopping, traveling without a companion, ambulating, walking, using public transportation, climbing steps, preparing meals and caring for her personal hygiene. (314).  Morris also completed a separate "pain

limitation questionnaire" concerning Plaintiff's pain, though he noted that he was "not the physician treating the patient's pain." (316).  Nevertheless, Morris opined, apparently based on Plaintiff's statements to him, that she had pain which prevented her from performing her past work, interfered with her concentration, caused her to have "good days" and "bad days," and would likely cause her to miss two days of work per month. (316).  Morris stated that on "bad" pain days, Plaintiff's productivity would likely be reduced by 20-25%. (316).

    For Plaintiff's depression, her primary treating physician was psychiatrist Katherine Duffy, M.D. ("Duffy").  On December 27, 2013, Duffy completed a psychiatric evaluation. (301).  Duffy, who had seen Plaintiff on eight occasions over two years, indicated that Plaintiff had depression, and claimed to have "loss of motivation" which resulted in her "engag[ing] in little or no productive activity." (301).  Duffy stated, though, that Plaintiff had only "mild" limitation on her daily activities and social functioning. (302).  Duffy further stated that Plaintiff retained the ability to understand and carry out instructions, respond appropriately to supervisors and co-workers and "handle customary work pressures." (303).  When asked if Plaintiff's conditions would allow her to work on a competitive basis, eight hours per day, five days per week, Duffy indicated that Plaintiff would need a "more gradual return to work," due to her "h/o [history of] significant substance abuse" and depression. (304).  Also on December 27, 2013, Duffy completed a separate report concerning Plaintiff's ability to perform work-related activities. (305-307).  Duffy indicated that Plaintiff would have "moderate" restrictions on carrying out detailed instructions and responding appropriately to work pressures, but would otherwise have only "slight" limitations in particular areas. (305-306).

On August 31, 2012, the Commissioner had Plaintiff undergo a consultative psychiatric evaluation by psychologist Sherry Schwartz, Ph.D. ("Schwartz").  Plaintiff told Schwartz that she had experienced depression and anxiety since 2008, and that she periodically experienced "panic attacks." (287).  Plaintiff also described having a "significant history of drug and alcohol problems." (287).  The results of Schwartz's mental status examination of Plaintiff were essentially normal, except for Plaintiff's affect, which was "mildly constricted and mildly depressed," her mood, which was "neutral to mildly dysthymic," and her insight and judgment, which were "poor." (288).  Schwartz opined that Plaintiff could follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently and make appropriate decisions. (289).  However, Schwartz indicated that Plaintiff could not "relate adequately with others" or "appropriately deal with stress." (289).

On January 21, 2014, Plaintiff and her attorney appeared for a hearing before an Administrative Law Judge ("ALJ").  During the hearing, Plaintiff testified, in pertinent part, that she can lift ten pounds, stand for fifteen minutes before needing to sit, sit for thirty minutes before needing to stand, and walk for thirty minutes before needing to sit. (48).  The ALJ also took testimony from a vocational expert ("VE").

On February 27, 2014, the ALJ issued a Decision (11-23), denying Plaintiff's claim.  Applying the familiar five-step sequential analysis for Social Security disability claims, the ALJ found, at the first and second steps, that Plaintiff had not engaged in substantial gainful activity at any relevant time, and that she had the following severe impairments: "lumbar disc disease; degenerative disc disease of the cervical spine,

knee impingement; depression; anxiety; drug and alcohol abuse; and fibromyalgia."

(13).  At the third step of the analysis, the ALJ found that Plaintiff's impairments did not

meet or medically-equal a listed impairment. (13-15).  Prior to reaching the fourth step

of the sequential analysis, the ALJ found that Plaintiff had the following residual

functional capacity:

> [T]hrough the date last insured, the claimant had the residual functional
> capacity to perform less than the full range of sedentary work as defined
> in 20 CFR 404.1567(a).  Although the claimant is capable of lifting,
> carrying, pushing and pulling ten pounds occasionally, sitting for six hours
> in an eight-hour work day and standing and walking two hours in an eight-
> hour workday, she can only sit for thirty minutes at a time before needing
> to stand and stretch briefly.  Psychiatrically, the claimant is limited to only
> simple tasks and occasional interaction with coworkers and the general
> public.

(15).  In making this finding the ALJ explained the weight that he gave to various

medical opinions.  The ALJ gave "great weight" to Morris's opinion, finding that it was

"consistent with the overall medical record," although he did not credit Morris's

statement that Plaintiff should be limited to only "moderate" noise, because Morris did

not explain that limitation. (20).  However, the ALJ noted that such point was really

irrelevant, since the jobs that Plaintiff could perform did not involve more than moderate

noise. (20).  The ALJ gave "significant weight" to Duffy's opinion, finding that it was

"supported by the medical evidence," and "accurately portray[ed] the claimant as an

individual who does have some psychiatric problems, but not to the extent that it would

preclude all work activities." (19).  The ALJ gave "some weight" to Schwartz's opinion,

finding that it was "mostly commensurate with the medical evidence of record." (20).

However, the ALJ gave "no weight" to Schwartz's statement that Plaintiff was incapable

of relating adequately with others and dealing with stress, since it was "belied by all other mental health reports and the claimant's activities of daily living." (20).

At the fourth step of the sequential analysis, the ALJ found that Plaintiff cannot perform her past relevant work. (21).  However, at the fifth and final step of the analysis, the ALJ found, based upon the VE's answers to hypothetical questions posed at the hearing, that Plaintiff can perform certain simple, sedentary jobs, namely, "addresser," DOT 209.587-010, and "table work spotter," DOT 739.687-182 (22).  Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision.

On April 1, 2015, Plaintiff commenced this action.  In moving for judgment on the pleadings, Plaintiff contends that the ALJ's RFC determination is the product of legal error and is not supported by substantial evidence, for several reasons which the Court will discuss below.  Defendant opposes Plaintiff's application and cross-moves for judgment on the pleadings.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

DISCUSSION

<u>Plaintiff's Ability to Handle Stress</u>

Plaintiff contends that the ALJ "fail[ed] to accurately and consistently weigh opinion evidence" concerning her "mental, nonexertional limitations," which led to "an internal inconsistency" in his Decision.[1]  Specifically, Plaintiff maintains that it was inconsistent for the ALJ to assign "significant weight" to Dr. Duffy's psychological evaluation, which indicated that Plaintiff had "moderate" limitations on handling work-related stress, while assigning "no weight" to Dr. Schwartz's psychological evaluation, which found that Plaintiff had no ability to deal with work related stress.[2]  Plaintiff also indicates that the ALJ failed to "account[ ] for [her] inability to deal with work-place stressors, consistent with [the] opinion of Dr. Duffy."[3]

However, the Court disagrees that there is an inconsistency in the ALJ's treatment of Duffy's and Schwartz's opinions.  Duffy said that Plaintiff has some ability to deal with work-related stress, while Schwartz said that Plaintiff has no such ability, and the ALJ credited Duffy's opinion over Schwartz's, and explained why. (20) Specifically, the ALJ indicated that Schwartz's opinion regarding Plaintiff's ability to appropriately deal with stress was "belied by all other mental health reports and the claimant's activities of daily living." (20).  That determination is supported by substantial evidence.

The Court also disagrees that the ALJ's RFC finding failed to "account for"

---

[1]Pl. Memo of Law [#7-1] at p. 13.

[2]Schwartz evaluation, Transcript (289) ("The claimant cannot . . . appropriately deal with stress.").

[3]Pl. Memo of Law [#7-1] at p. 14.

7

Plaintiff's moderate limitation in dealing with stress.  Rather, in discussing his RFC finding, the ALJ gave "significant weight" to Duffy's opinion, which he interpreted as indicating that Plaintiff "does have some psychiatric problems, but not to the extent that it would preclude all work activities." (19).  Moreover, the ALJ's RFC determination implicitly accounted for Plaintiff's reduced ability to handle work-related stress, by limiting Plaintiff to "simple tasks and occasional interaction with coworkers and the general public."  Consequently, to the extent that the ALJ erred by failing to specifically include such limitation in the RFC, the error was harmless. *See, Houseman v. Colvin*, No. 13-CV-210-JTC, 2015 WL 6442571, at *8 (W.D.N.Y. Oct. 23, 2015) ("Here, the ALJ found that plaintiff could perform simple unskilled work with limited interaction with the public and co-workers. Implicit in this finding is plaintiff's ability to make simple decisions and adapt to a low stress work environment.") (Denying the plaintiff's argument that the ALJ's failure to provide a function-by-function analysis of the plaintiff's "mental RFC" required a remand, and finding that any error in that regard was harmless, citing, *inter alia*, *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Plaintiff's argument on this point is therefore denied.

  <u>Plaintiff's Ability to Sit</u>

  Plaintiff next maintains that the ALJ's RFC determination was erroneous because, although the ALJ properly found that Dr. Morris's opinion was entitled to great weight, he did not adopt Morris's opinion that Plaintiff could sit for only fifteen minutes before needing to change position, and, instead, found that Plaintiff could sit for thirty

minutes.[4]   However, the ALJ evidently made the thirty-minute finding based upon Plaintiff's own testimony at the hearing.  In that regard, as the ALJ pointed out in his decision, at the hearing Plaintiff testified that she can sit for thirty minutes before needing to stand. (48).  Consequently, the issue before the Court is whether the ALJ erred by accepting Plaintiff's sworn testimony concerning her ability to sit, rather than relying upon Morris's contrary, more-limiting, opinion.

According to the Second Circuit Court of Appeals, an ALJ is not required to give controlling weight to a treating physician's opinion  that conflicts with the claimant's own statement concerning her abilities:

> An ALJ is not required to give deference to a claimant's treating physician's opinion where that opinion, as here, is "not consistent with other substantial evidence in the record." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004).  . . .  Dr. Eppolito's assessments conflicted with Wavercak's description of his daily activities. Accordingly, the ALJ was not required to defer to Dr. Eppolito's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)(i)–(ii), (d)(3)–(6) (explaining that deference accorded to treating physician's opinion may be reduced based on consistency of opinion with rest of medical record, and any other elements "which tend to ... contradict the opinion").

*Wavercak v. Astrue*, No. 10–3077–cv, 420 F. App'x 91, 93–94, 2011 WL 1532362 (2d Cir. Apr. 25, 2011); *see also, Carvey v. Astrue*, No. 09–4438–cv, 380 F. App'x 50, 52, 2010 WL 2264932 (2d Cir. Jun. 7, 2010) (ALJ was not required to accept treating physician's opinion that claimant was completely unable to lift, when claimant admitted at the hearing that he could lift and carry five to ten pounds).  Plaintiff's argument on this point is therefore rejected.

---

[4]Pl. Memo of Law [#7-1] at p. 12.

9

<u>Plaintiff's Ability to Withstand Noise</u>

Plaintiff next contends that the ALJ erred by rejecting Dr. Morris's opinion that Plaintiff could withstand working around "moderate" noise, such as one would encounter in an office, but should not be around "loud" or "very loud" noise. (313).  The ALJ declined to accept that opinion, observing that, "I do not give credit to Dr. Morris's opinion that the claimant is limited to a moderate noise level because there is no hearing impairment." (20).  However, the ALJ further stated: "In any event, the occupations identified by the vocational expert would not involve greater than a moderate noise level." (20).

Plaintiff contends that the ALJ erred in this regard, because even though Morris's own records do not indicate that Plaintiff has difficulty being around noises, records from Plaintiff's mental health providers contain references to Plaintiff being sensitive to noise.  However, neither Duffy's nor Schwartz's reports indicate that Plaintiff is sensitive to noise. (286-290, 301-307).

The Court finds that any error in this regard does not warrant a remand.  In that regard, even assuming *arguendo* that the ALJ erred in rejecting Morris's opinion on this point, such error was harmless because, as the ALJ noted, the jobs that he identified at step five of the sequential analysis do not involve more-than-moderate noise.  Plaintiff has not argued otherwise.  Therefore, the Court finds that Plaintiff's argument on this point is without merit.

<u>Plaintiff's Ability to Use Her Hands and Feet</u>

Lastly, Plaintiff indicates that the ALJ's RFC determination was erroneous because it failed to incorporate Dr. Morris's opinion concerning limitations on Plaintiff's

ability to use her hands and feet.  Specifically, Plaintiff states:

> The ALJ commits . . . error with respect to portions of Dr. Morris's opinion containing limitations in frequent use of the hands and feet. T 311.  The ALJ's decision accurately summarizes these limitations (T 18) however, later in the decision, when weighing opinion evidence and according 'great weight' to Dr. Morris's [opinion] (T 20), the ALJ fails to include such a limitation in his RFC finding or explain his rejection of them and thereby errs in purporting to give 'great weight' to an opinion more limiting that his own RFC.[5]

As this quote indicates, Plaintiff is referring to page 311 of the administrative transcript, where Morris indicated that Plaintiff could use her hands to reach, handle, finger, feel, push and pull "frequently," meaning "1/3 to 2/3" of the time. (311).  In that same report, Morris indicated that Plaintiff could "frequently" use her feet to operate "foot controls." (311).  Plaintiff essentially maintains that the ALJ erred, by failing to include these non-exertional impairments, relating to reaching, handling, fingering, feeling, pushing, pulling and using feet, in either the RFC or the hypotheticals to the VE, and that such error requires a remand.

In opposing Plaintiff's motion on this point, the Commissioner argues that the ALJ properly rejected this aspect of Morris's opinion, and instead adopted the opinion of a consultative examiner, Dr. Toor, who did not identify any limitations on Plaintiff's ability to use her hands. [6]  Specifically, Toor found that Plaintiff's hand and finger dexterity were intact and that she had full grip strength bilaterally. (295).  Defendant

---

[5]Pl. Memo of  Law [#7-1] at p. 13.

[6]*See*, ALJ's Decision (20); *see also*, Def. Memo of Law [#12-2] at p. 21 ("[T]he ALJ adopted the vast majority of most of Dr. Morris's conclusions, but adopted Dr. Toor's conclusions with respect to . . . using hands[.]").

alternatively argues that the ALJ was not required to simply adopt all of the limitations contained in Morris's report, citing *Matta v. Astrue*, 508 F.App'x 53, 56 (2d Cir. Jan. 25, 2013).

Preliminarily, the Court observes that to the extent Plaintiff is maintaining that the ALJ failed to include limitations on pushing and pulling in the RFC, or in the hypothetical questions posed to the VE, Plaintiff is mistaken, since the ALJ indicated that Plaintiff could push and pull only "occasionally," which is more restrictive than Morris's opinion that she could push and pull "frequently."  The Court agrees, though, that the ALJ did not expressly indicate, in his RFC or in his questions to the VE, that Plaintiff is limited to frequent reaching, handling, fingering, feeling and using feet (as opposed to having an unlimited ability to do those things).

Also preliminarily, the Court finds that Defendant is mistaken in arguing that the ALJ rejected this aspect of Morris's opinion.  Such argument is entirely speculative, since the ALJ's decision gives no express indication that he rejected Morris's opinion regarding reaching, handling, fingering, feeling and using feet, and instead adopted Toor's opinion.  To the contrary, the ALJ's discussion of Morris's report suggests that the only aspects of the report that he did not accept were Morris's opinions concerning Plaintiff's ability to sit and her ability to work around noise.

Accordingly, the Court views the issue as being this:  Whether the ALJ's inadvertent failure to expressly limit Plaintiff to only frequent reaching, handling, fingering and feeling, in the RFC and in his questions to the VE, requires a remand. The Court finds that it does not, since neither of the occupations that the ALJ identified, at step five of the sequential analysis, requires more than frequent reaching, handling,

12

fingering or feeling. *See, Dictionary of Occupational Titles* (4th ed., revised 1991),

DICOT 739.687-182 (G.P.O.), 1991 WL 680217  (Indicating that occupation of "table

worker" requires "frequent" ("from 1/3 to 2/3 of the time") reaching, handling and

fingering, but no feeling, with no indication that use of foot controls is required); *see*

*also, Dictionary of Occupational Titles* (4th ed., revised 1991), DICOT 209.587-010

(G.P.O.), 1991 WL 671797  (Indicating that occupation of "addresser" requires

"frequent" ("from 1/3 to 2/3 of the time") reaching, handling and fingering, but no feeling,

with no indication that use of foot controls is required).  Plaintiff does not claim

otherwise.  Accordingly, the Court finds that the ALJ's error was harmless in this case.

*See, e.g., Holloman v. Commissioner of Soc. Sec.*, 639 Fed. Appx. 810, 816 (3d Cir.

Feb. 8, 2016) (Remand was not required even though ALJ failed to include a non-

exertional impairment in hypothetical question to the VE, since the impairment which

the ALJ failed to mention would not have prevented the claimant from performing the

occupation identified by the ALJ at Step Five) (citing the Dictionary of Occupational

Titles ("DICOT")); *see also, Duncan v. Colvin*, 608 Fed. Appx. 566, 577 (10th Cir. Apr.

2, 2015) (ALJ erred by failing to include non-exertional impairment in hypothetical to

VE, but error was harmless because the omitted non-exertional impairment would not

prevent the claimant from performing two of the three jobs identified by the ALJ at Step

Five) (citing the DICOT); *Race v. Comm'r of Soc. Sec.*, No. 114CV1357GTSWBC, 2016

WL 3511779, at *5, n. 4 (N.D.N.Y. May 24, 2016) ("Failure to explicitly include social

limitations [in hypothetical questions to VE] was also harmless in this case because

even had the ALJ included moderate social limitations, Plaintiff would be able to

perform two of the three occupations identified by the VE.") (citing the DICOT),report and recommendation adopted, No. 1:14-CV-1357, 2016 WL 3512217 (N.D.N.Y. June 22, 2016).

CONCLUSION

Plaintiff's application for judgment on the pleadings [#7] is denied, and Defendant's cross-motion [#12] for judgment on the pleadings is granted.  The action is dismissed.  The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
      November 15, 2016

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge